# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## BROWARD DIVISION
## CASE NO. 09-CV-61158 – SEITZ/O'SULLIVAN

ALBERT NAPIER and JANE NAPIER,
as the Co-Personal Representatives
of the ESTATE OF ALESHIA NAPIER,
on behalf of the Estate, and on behalf
of her Survivors, Albert Napier and Jane Napier,

      Plaintiff,

v.

FLORIDA DEPARTMENT OF CORRECTIONS,
an Agency of the State of Florida,
PRISON HEALTH SERVICES, INC.,
a Tennessee Corporation, registered in and doing
business in the state of Florida,
MHM CORRECTIONAL SERVICES, INC.,
a Virginia Corporation, registered in and doing
business in the state of Florida, and
ALEJANDRO URRUTIA,

      Defendants.

_____/

## <u>SECOND AMENDED COMPLAINT AND JURY DEMAND</u>

Plaintiff, ALBERT NAPIER and JANE NAPIER, as Co-Personal Representatives of the

ESTATE OF ALESHIA NAPIER, on behalf of the Estate of Aleshia Napier, and on behalf of

her survivors, ALBERT NAPIER and JANE NAPIER, sues defendants, FLORIDA

DEPARTMENT OF CORRECTIONS, an Agency of the state of Florida, PRISON HEALTH

SERVICES, INC., a Tennessee Corporation registered and doing business in the state of Florida,

- 1 -

{07022454;5}

MHM CORRECTIONAL SERVICES, INC., a Virginia Corporation registered and doing business in the state of Florida, and ALEJANDRO URRUTIA, and allege:

## Parties

1.      Plaintiff, Albert Napier and Jane Napier, is the duly appointed Co-Personal Representatives of the Estate of Aleshia Napier, having been appointed Co-Personal Representatives by the Probate Division of the Circuit Court in and for Broward County, Florida, File No. 09-00336.  This action is brought by Albert Napier and Jane Napier, the parents of Aleshia Napier, in their capacities as Co-Personal Representatives of the Estate of Aleshia Napier, on behalf of the Estate of Aleshia Napier, and on behalf of her survivors, Albert Napier and Jane Napier.

2.      At all times material to this action, Aleshia Napier was an inmate confined in Broward Correctional Institution, Fort Lauderdale, Florida, a correctional facility owned and operated by defendant Florida Department of Corrections, and a resident of Broward County, Florida.

3.      Defendant, Florida Department of Corrections (hereinafter "FDOC"), is an Agency of the state of Florida, subject to suit for negligence pursuant to Section 768.28 of the Florida Statutes.

4.      Defendant, Prison Health Services, Inc. (hereinafter "PHS"), is a Tennessee Corporation registered and doing business in the state of Florida, as an agent of the FDOC.  At all times material to this action, PHS was responsible for providing comprehensive and medically necessary medical, dental, mental health and pharmaceutical services to all inmates in

Region IV of the Florida Department of Corrections, including Broward Correctional Institution, under contract with defendant FDOC.

5.     Defendant, PHS, in providing comprehensive and medically necessary medical, dental, mental health and pharmaceutical services to inmates at Broward Correctional Institution, was performing a governmental function on government property, under the control and supervision of governmental officials and with government funds.  All actions performed by PHS, its employees and agents, were performed under color of state law and constitute state action.

6.     Defendant, MHM Correctional Services, Inc. (hereinafter "MHM"), is a Virginia corporation registered and doing business in the state of Florida.  At all times material to this action, MHM was responsible for providing and managing all mental health services to all inmates in Region IV of the Florida Department of Corrections, including Broward Correctional Institution, under subcontract with PHS.  MHM was not under contract with the FDOC.

7.     Defendant, Alejandro Urrutia, is a medical doctor who, at all times material to this action, was a psychiatrist who was responsible for patient mental health care at Broward Correctional Institution.  Defendant Urrutia was at all times material to this action employed by defendant MHM.

8.     At all times material to this action, defendant Urrutia was responsible for carrying out the policies and procedures for mental health care then in effect at Broward Correctional Institution and was further responsible for the correct and prompt response to the mental health care needs of inmates occurring, and coming to his attention, during his tenure as Psychiatrist at Broward Correctional Institution.  At all times material to this action, Aleshia Napier (hereinafter

- 3 -

"Aleshia") was a prisoner subject to the custody and control of defendant FDOC and subject to the care and treatment of defendants FDOC, PHS, MHM and Urrutia.

9.      At all times material to this action, if Aleshia Napier required medical or mental health treatment, her only avenue was to rely on the medical and mental health treatment provided by defendants FDOC, PHS, MHM and Urrutia.

## Jurisdiction and Venue

10.     Plaintiff has complied with all applicable pre-suit screening provisions of Section 766.106, Florida Statutes, and the pre-suit notice provisions of Section 768.28, Florida Statutes. Defendants FDOC, MHM, PHS and Urrutia failed to fully comply with the pre-suit discovery and screening requirements of Section 766.106, Florida Statutes.

11.     This Court has jurisdiction over this matter under the following:

a.      28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States;

b.      28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and

c.      28 U.S.C. § 1343, as this is a civil action seeking to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

{07022454;5}

12.     Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

13.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as Defendants do business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

15.     On July 31, 2009, defendants MHM and Urrutia removed the matter to this Court based on federal question jurisdiction; defendants FDOC and PHS have since consented to removal.  *See* Notice of Removal (D.E. 1).

## Factual Allegations

16.     On or about January 18, 2006, Defendants conducted an Initial Intake Screening Summary and Suicide Profile on Aleshia Napier upon her incarceration with the Florida Department of Corrections at Broward Correctional Institution.  Aleshia was eighteen (18) years of age when she was received at Broward Correctional Institution on January 11, 2006.

17.     Aleshia's Suicide Profile indicated a history of suicidal ideations and recent suicide attempts.  Specifically, Aleshia's Suicide Profile revealed that Aleshia had attempted suicide on twelve different occasions, including three occasions in the two years preceding her arrest and incarceration which resulted in her involuntary psychiatric hospitalization.

- 5 -

18.     Aleshia's Suicide Profile further revealed that Aleshia was suffering from suicidal ideations as recently as the week prior to her intake at Broward Correctional Institution while she was being held at the Palm Beach County Jail.

19.     On January 20, 2006, Aleshia was given a Psychiatric Evaluation by John Martin, M.D, an employee of the FDOC.  Aleshia's Psychiatric Evaluation indicated that she was diagnosed with bipolar disorder and depression with psychotic features, with additional problems of mood swings and hallucinations.

20.     At all times material to this action, Aleshia's Intake Screening Summary and Suicide Profile were kept in her medical record and available and accessible to all of her treating medical and mental health physicians.

21.     On or about September 15, 2006, while Aleshia was incarcerated at Lowell Correctional Institution in Ocala, Florida, she made a serious suicide attempt by setting her sheets on fire after hearing continued voices telling her to kill herself.

22.     As a result of Aleshia's suicide attempt on or about September 15, 2006, an emergency referral was made to transfer Aleshia to the Crisis Stabilization Unit at Broward Correctional Institution for inpatient mental health care.  Aleshia's inpatient treatment request further indicated that Aleshia was suffering from acute psychosis and was suicidal.

23.     On or about September 18, 2006, Aleshia was transferred to Broward Correctional Institution and admitted to the Crisis Stabilization Unit and placed under Suicide Observation Status.

24.     Within the Florida Department of Corrections, inmates are admitted to the Crisis Stabilization Unit for intensive psychological and psychiatric services provided within a highly

- 6 -

structured inpatient setting. Crisis stabilization care is provided to those inmates whose mental disorders or symptoms cannot be safely and adequately treated within the general patient population.

25.     According to FDOC policy, the typical length of stay for an inmate admitted to a Crisis Stabilization Unit is fifteen to thirty days.

26.     On or about September 21, 2006, three days after Aleshia's transfer to Broward Correctional Institution for inpatient care and less than one week after her serious suicide attempt, Aleshia was discharged from the Crisis Stabilization Unit and taken off of Suicide Observation Status by defendant Urrutia and sent to solitary confinement.

27.     At all times relevant, Defendants were well aware of the dangers of placing suicidal inmates in solitary confinement and the deteriorative effects of solitary confinement on the mental health of mentally ill inmates.

28.     Hours after being discharged from the Crisis Stabilization Unit on or about September 21, 2006, Aleshia declared a psychological emergency from solitary confinement, reporting suicidal ideations.

29.     As a result of Aleshia's psychological emergency on or about September 21, 2006, Aleshia was immediately admitted to an Isolation Management Room and again placed under Suicide Observation Status.

30.     Four days later, on or about September 25, 2006, Aleshia was discharged from her Isolation Management Room and sent back to solitary confinement. Aleshia's discharge and discontinuation of Suicide Observation Status on September 25, 2006 was again ordered by defendant Urrutia.

- 7 -

31.     On or about September 28, 2006, Aleshia declared a second psychological emergency from solitary confinement, reporting auditory and visual hallucinations.  Despite such thoughts, Aleshia was not referred to a higher level of care or observation and was instead again returned to solitary confinement.

32.     On or about September 30, 2006, Aleshia declared a third psychological emergency from solitary confinement, reporting a desire and intent to commit suicide to get rid of the voices in her head.

33.     As a result of Aleshia's psychological emergency on or about September 30, 2006, Aleshia was again admitted to an Isolation Management Room and placed under Suicide Observation Status.

34.     Five days later, on or about October 5, 2006, Aleshia was again discharged from her Isolation Management Room and returned to solitary confinement.  Aleshia's discharge and discontinuation of Suicide Observation Status on October 5, 2006 was again ordered by defendant Urrutia.

35.     On or about October 7, 2006 and October 10, 2006, Aleshia declared a fourth and fifth psychological emergency from solitary confinement, reporting increased feelings of depression and ambivalence.  Despite noting such feelings, Aleshia was not referred to a higher level of care or observation and was returned to solitary confinement.

36.     On or about October 14, 2006, Aleshia was again transferred to an Isolation Management Room and placed under Suicide Observation Status after mental health staff responded to a mental health emergency in solitary confinement during which staff assessed a risk of suicide.

- 8 -

37.     On or about October 18, 2006, Aleshia was seen by a behavioral health specialist while in her Isolation Management Room.  According to the specialist's evaluation, the behavioral health specialist was unable to determine Aleshia's mood or affect, and was unable to determine whether Aleshia had any current suicidal ideations, plans or intent.

38.     After this evaluation, at or about 8:00 a.m. on October 18, 2006, defendant Urrutia ordered Aleshia to be discharged from her Isolation Management Room and transferred to a Crisis Stabilization Unit for more intensive care.

39.     Upon information and belief, Aleshia was never sent to the Crisis Stabilization Unit on October 18, 2006.

40.     One hour later, at or about 9:00 a.m. on October 18, 2006, defendant Urrutia, despite his knowledge of Aleshia's need for more intensive crisis stabilization care, ordered Aleshia to be discharged from her Isolation Management Room and returned to solitary confinement.

41.     Upon information and belief, on October 18, 2006, Aleshia was discharged from her Isolation Management Room, taken off of Suicide Observation Status and returned to solitary confinement under orders from defendant Urrutia.

42.     Aleshia was discharged from her Isolation Management Room, taken off Suicide Observation Status and placed in solitary confinement "out of sight, out of mind" because Defendants did not have sufficient bed space in the Crisis Stabilization Unit for persons such as Aleshia who were obviously suicidal.  As a result, the Defendants were more interested in quickly moving patients in and out of Suicide Observation Status cells than in treating and observing them.

- 9 -

43. Defendants, therefore, had knowledge that Aleshia was grossly suicidal and in need of serious mental health care.

44. Defendants ignored Aleshia's serious mental health needs and intentionally and/or negligently failed to provide her with the very mental health care they knew was necessary, despite the fact that Aleshia was crying out for help, the very help Defendants were charged to provide her with.

45. At all times after her release from her Isolation Management Room on October 18, 2006, Aleshia was confined under no suicide preventive measures, in a solitary confinement cell that was not equipped to house a known suicidal inmate. Instead, Aleshia's solitary confinement cell contained several known instrumentalities for suicide, such as clothing, sheets, towels and various means and instrumentalities from which to tie and suspend those items.

46. On October 31, 2006, Aleshia was found by prison staff hanging in her solitary confinement cell, suspended from her bunk bed post by a bed sheet that was tied around her neck. Aleshia was pronounced dead on the scene by EMS technicians at 2:35 p.m. on October 31, 2006.

47. After Aleshia's release from her Isolation Management Room on October 18, 2006, Aleshia was only seen twice by a mental health professional until she was found to have committed suicide in her cell on October 31, 2006.

48. At all times relevant, defendant FDOC conducted regular audits of defendant PHS and received reports regarding the conditions at Broward Correctional Institute. Therefore, defendant FDOC was well aware that female inmates, including Aleshia Napier, were not receiving minimally adequate mental health care at Broward Correctional Institution.

- 10 -

{07022454;5}

49. At all times relevant, defendant PHS received reports regarding the conditions at Broward Correctional Institute. Therefore, defendant PHS was well aware that female inmates, including Aleshia Napier, were not receiving minimally adequate mental health care at Broward Correctional Institution.

50. At all times relevant, defendant MHM was well aware that female inmates, including Aleshia Napier, were not receiving minimally adequate mental health care at Broward Correctional Institution.

51. At all times relevant, defendant Urrutia was well aware that female inmates, including Aleshia Napier, were not receiving minimally adequate mental health care at Broward Correctional Institution.

<div align="center">

**Count One – Wrongful Death**
**<ins>Defendant Florida Department of Corrections</ins>**

</div>

52. Plaintiff repeats and realleges paragraphs one through fifty-one as if fully set forth herein.

53. This Count One is against defendant, Florida Department of Corrections, for the negligent treatment of Aleshia Napier while incarcerated at Broward Correctional Institution resulting in her death in violation of Florida's Wrongful Death Act, Sections 768.16-768.27, Florida Statutes, and Florida's Medical Malpractice provisions, Sections 766.101-766.316, Florida Statutes.

54. Defendant Florida Department of Corrections owed Aleshia Napier a nondelegable duty to use reasonable care to ensure her safety.

<div align="center">

- 11 -

</div>

55.    Defendant Florida Department of Corrections failed to perform its duty of using reasonable care to ensure Aleshia Napier's safety, thereby abandoning Aleshia Napier as a patient.

56.    The mental health care provided by defendant Florida Department of Corrections fell below the generally accepted standard of care in the community in that mental health staff failed to properly monitor and treat Aleshia Napier's mental health condition and needs, including, but not limited to:

A.    failing to provide Aleshia with daily mental health treatment by a licensed Psychiatrist or Psychologist while admitted to an Isolation Management Room despite knowledge of her suicidal history and tendencies;

B.    failing to provide Aleshia with regular mental health treatment while in solitary confinement despite knowledge of her suicidal history and tendencies;

C.    failing to provide Aleshia with regular mental health monitoring and observation while in solitary confinement despite knowledge of her suicidal history and tendencies;

D.    failing to provide Aleshia with crisis stabilization care despite knowledge of her need for intensive and structured care;

E.    failing to adequately respond to Aleshia's mental health emergencies reported while in solitary confinement despite knowledge of her suicidal history and tendencies;

F.    failing to properly place Aleshia under adequate suicidal preventive measures necessary to prevent her death, despite knowledge of the risks solitary confinement poses to suicidal inmates, including, but not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate.

- 12 -

{07022454;5}

57.     As a direct and proximate result of defendant Florida Department of Corrections' failure to perform its duty of using reasonable care to ensure Aleshia Napier's safety, Aleshia Napier died.

58.     Defendant Florida Department of Corrections was well aware that female inmates, including Aleshia Napier, were not receiving minimally adequate mental health care at Broward Correctional Institution.  Therefore, it was reasonably foreseeable that harm would befall Aleshia Napier either directly or indirectly as a result of the actions and omissions of defendant Florida Department of Corrections.

WHEREFORE, on this Count One, as a result of the tragic and untimely death of Aleshia Napier in violation of Florida's Wrongful Death Act and Florida's Medical Malpractice provisions, the Survivors of and the Estate of Aleshia Napier have sustained the following damages, and therefore seek same from defendant Florida Department of Corrections:

A.     The Estate of Aleshia Napier has sustained the following damages:

1.     funeral and burial expenses incurred as a result of the death of Aleshia Napier that have become a charge against her Estate or that were paid on her behalf;

2.     loss of prospective net Estate accumulations; and

3.     loss of earnings of Aleshia Napier from the date of her death, less loss support of her survivors excluding contributions in kind with interest.

B.     Albert Napier, as the father of Aleshia Napier, a minor at her time of death, has sustained the following damages:

1.     loss of support and services of his daughter;

- 13 -

    2.      mental pain and suffering from the date of injury and continuing for the remainder of his life; and

    3.      medical and funeral expenses due to the death of Aleshia Napier.

C.      Jane Napier, as the mother of Aleshia Napier, a minor at her time of death, has sustained the following damages:

    1.      loss of support and services of her daughter;

    2.      mental pain and suffering from the date of injury and continuing for the remainder of her life; and

    3.      medical and funeral expenses due to the death of Aleshia Napier.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; and such other and further relief as the Court deems just and equitable.

**Count Two – Wrongful Death**
**Defendant Prison Health Services, Inc.**

59.      Plaintiff repeats and realleges paragraphs one through fifty-one as if fully set forth herein.

60.      This Count Two is against defendant, Prison Health Services, Inc., for actions and/or omissions taken with bad faith, malicious purpose and/or in a manner exhibiting wanton and willful disregard of human rights, safety, or property with respect to the treatment of Aleshia Napier while incarcerated at Broward Correctional Institution resulting in her death in violation of Florida's Wrongful Death Act, Sections 768.16-768.27, Florida Statutes, and Florida's Medical Malpractice provisions, Sections 766.101-766.316, Florida Statutes.

- 14 -

61.     Defendant Prison Health Services, Inc. owed Aleshia Napier a duty to use reasonable care to ensure her safety.

62.     Defendant Prison Health Services, Inc. failed to perform its duty of using reasonable care to ensure Aleshia Napier's safety, thereby abandoning Aleshia Napier as a patient.

63.     The mental health care provided by the defendant Prison Health Services, Inc. fell below the generally accepted standard of care in the community and rose to the level of constituting a clear and present danger, in that mental health staff failed to properly monitor and treat Aleshia Napier's mental health condition and needs, including, but not limited to:

A.      failing to provide Aleshia with daily mental health treatment by a licensed Psychiatrist or Psychologist while admitted to an Isolation Management Room despite knowledge of her suicidal history and tendencies;

B.      failing to provide Aleshia with regular mental health treatment while in solitary confinement despite knowledge of her suicidal history and tendencies;

C.      failing to provide Aleshia with regular mental health monitoring and observation while in solitary confinement despite knowledge of her suicidal history and tendencies;

D.      failing to provide Aleshia with crisis stabilization care despite knowledge of her need for intensive and structured care;

E.      failing to adequately respond to Aleshia's mental health emergencies reported while in solitary confinement despite knowledge of her suicidal history and tendencies; and

F.      failing to properly place Aleshia under adequate suicidal preventive measures necessary to prevent her death, despite knowledge of the risks solitary confinement poses to

- 15 -

suicidal inmates, including, but not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate.

64.    As a direct and proximate result of defendant Prison Health Services, Inc.'s failure to perform their duty of using reasonable care to ensure Aleshia Napier's safety, Aleshia Napier died.

65.    Defendant Prison Health Services, Inc. was well aware that female inmates, including Aleshia Napier, were not receiving minimally adequate mental health care at Broward Correctional Institution.  Defendant Prison Health Services, Inc.'s actions and omissions were made consciously and voluntarily, and it was reasonably foreseeable that harm would befall Aleshia Napier either directly or indirectly as a result of the actions and omissions of defendant Prison Health Services, Inc.

WHEREFORE, on this Count Two, as a result of the tragic and untimely death of Aleshia Napier in violation of Florida's Wrongful Death Act and Florida's Medical Malpractice provisions, the Survivors of and the Estate of Aleshia Napier have sustained the following damages, and therefore seek same from defendant Prison Health Services, Inc.:

A.    The Estate of Aleshia Napier has sustained the following damages:

1.    funeral and burial expenses incurred as a result of the death of Aleshia Napier that have become a charge against her Estate or that were paid on her behalf;

2.    loss of prospective net Estate accumulations; and

3.    loss of earnings of Aleshia Napier from the date of her death, less loss support of her survivors excluding contributions in kind with interest.

- 16 -

B.   Albert Napier, as the father of Aleshia Napier, a minor at her time of death, has sustained the following damages:

1.   loss of support and services of his daughter;

2.   mental pain and suffering from the date of injury and continuing for the remainder of his life; and

3.   medical and funeral expenses due to the death of Aleshia Napier.

C.   Jane Napier, as the mother of Aleshia Napier, a minor at her time of death, has sustained the following damages:

1.   loss of support and services of her daughter;

2.   mental pain and suffering from the date of injury and continuing for the remainder of her life; and

3.   medical and funeral expenses due to the death of Aleshia Napier.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; and such other and further relief as the Court deems just and equitable.

**Count Three – Wrongful Death**
**Defendant MHM Correctional Services, Inc.**

66.   Plaintiff repeats and realleges paragraphs one through fifty-one as if fully set forth herein.

67.   This Count Three is against defendant, MHM Correctional Services, Inc., for the negligent conduct, gross negligent conduct, and/or intentional actions or omissions taken with bad faith, malicious purpose and/or in a manner exhibiting wanton and willful disregard of human rights, safety, or property with respect to the treatment of Aleshia Napier while

- 17 -

incarcerated at Broward Correctional Institution resulting in her death in violation of Florida's Wrongful Death Act, Sections 768.16-768.27, Florida Statutes, and Florida's Medical Malpractice provisions, Sections 766.101-766.316, Florida Statutes.

68.     Defendant MHM Correctional Services, Inc. acknowledged that its agents and employees were authorized to act for defendant MHM Correctional Services, Inc. when they committed the negligent, gross negligent, and/or intentional acts alleged herein.  Defendant MHM Correctional Services, Inc.'s agents and employees accepted the undertaking of acting on behalf of defendant MHM Correctional Services, Inc. when they committed the negligent, gross negligent, and/or intentional acts alleged herein.  Defendant MHM Correctional Services, Inc. had control over its agents and employees when they committed the negligent, gross negligent, and/or intentional acts alleged herein.

69.     The negligent, gross negligent, and/or intentional acts of defendant MHM Correctional Services, Inc., its agents and employees, were done while acting within the course and scope of their employ and/or agency with defendant MHM Correctional Services, Inc.

70.     Defendant MHM Correctional Services, Inc., its agents, and employees, owed Aleshia Napier a duty to use reasonable care to ensure her safety.

71.     Defendant MHM Correctional Services, Inc., its agents and employees, failed to perform their duty of using reasonable care to ensure Aleshia Napier's safety, thereby abandoning Aleshia Napier as a patient.

72.     The mental health care provided by defendant MHM Correctional Services, Inc., its agents and employees, fell below the generally accepted standard of care in the community, and rose to the level of constituting a clear and present danger, in that mental health staff failed

- 18 -

to properly monitor and treat Aleshia Napier's mental health condition and needs, including, but not limited to:

A.      failing to provide Aleshia with daily mental health treatment by a licensed Psychiatrist or Psychologist while admitted to an Isolation Management Room despite knowledge of her suicidal history and tendencies;

B.      failing to provide Aleshia with regular mental health treatment while in solitary confinement despite knowledge of her suicidal history and tendencies;

C.      failing to provide Aleshia with regular mental health monitoring and observation while in solitary confinement despite knowledge of her suicidal history and tendencies;

D.      failing to provide Aleshia with crisis stabilization care despite knowledge of her need for intensive and structured care;

E.      failing to adequately respond to Aleshia's mental health emergencies reported while in solitary confinement despite knowledge of her suicidal history and tendencies; and

F.      failing to properly place Aleshia under adequate suicidal preventive measures necessary to prevent her death, despite knowledge of the risks solitary confinement poses to suicidal inmates, including, but not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate.

73.     As a direct and proximate result of defendant MHM Correctional Services, Inc's., its agents' and employees', failure to perform their duty of using reasonable care to ensure Aleshia Napier's safety, Aleshia Napier died.

74.     Defendant MHM Correctional Services, Inc., its agents and employees, knew of Aleshia Napier's prior suicide attempts and mental health history while confined in the FDOC.

- 19 -

{07022454;5}

Defendant MHM Correctional Services, Inc.'s actions and omissions were made consciously and voluntarily, and it was reasonably foreseeable that harm would befall Aleshia Napier either directly or indirectly as a result of the actions and omissions of defendant MHM Correctional Services, Inc., its agents and employees.

75.     Defendant MHM Correctional Services, Inc., its agents and employees, acted with evil intent, malice, wantonness, and/or lucre when it committed the acts and omissions alleged herein.

WHEREFORE, on this Count Three, as a result of the tragic and untimely death of Aleshia Napier in violation of Florida's Wrongful Death Act and Florida's Medical Malpractice provisions, the Survivors of and the Estate of Aleshia Napier have sustained the following damages, and therefore seek same from defendant MHM Correctional Services, Inc.:

A.     The Estate of Aleshia Napier has sustained the following damages:

    1.     funeral and burial expenses incurred as a result of the death of Aleshia Napier that have become a charge against her Estate or that were paid on her behalf;

    2.     loss of prospective net Estate accumulations; and

    3.     loss of earnings of Aleshia Napier from the date of her death, less loss support of her survivors excluding contributions in kind with interest.

B.     Albert Napier, as the father of Aleshia Napier, a minor at her time of death, has sustained the following damages:

    1.     loss of support and services of his daughter;

- 20 -

2.      mental pain and suffering from the date of injury and continuing for the remainder of his life; and

3.      medical and funeral expenses due to the death of Aleshia Napier.

C.      Jane Napier, as the mother of Aleshia Napier, a minor at her time of death, has sustained the following damages:

1.      loss of support and services of her daughter;

2.      mental pain and suffering from the date of injury and continuing for the remainder of her life; and

3.      medical and funeral expenses due to the death of Aleshia Napier.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; punitive damages; and such other and further relief as the Court deems just and equitable.

## Count Four – Wrongful Death
## Defendant Alejandro Urrutia

76.      Plaintiff repeats and realleges paragraphs one through fifty-one as if fully set forth herein.

77.      This Count Four is against defendant, Alejandro Urrutia, M.D., for the negligent conduct, gross negligent conduct, and/or intentional actions or omissions taken with bad faith, malicious purpose and/or in a manner exhibiting wanton and willful disregard of human rights, safety, or property with respect to the treatment of Aleshia Napier while incarcerated at Broward Correctional Institution resulting in her death in violation of Florida's Wrongful Death Act, Sections 768.16-768.27, Florida Statutes, and Florida's Medical Malpractice provisions, Sections 766.101-766.316, Florida Statutes.

- 21 -

{07022454;5}

78.     Aleshia Napier was denied adequate and appropriate mental health care while in the care of defendant Alejandro Urrutia, M.D.

79.     Defendant Alejandro Urrutia, M.D. owed Aleshia Napier a duty to use reasonable care to ensure her safety.

80.     Defendant Alejandro Urrutia, M.D. failed to perform his duty of using reasonable care to ensure Aleshia Napier's safety, thereby abandoning Aleshia Napier as a patient.

81.     The mental health care provided by defendant Alejandro Urrutia, M.D. fell below the generally accepted standard of care in the community, and rose to the level of constituting a clear and present danger, in that defendant Alejandro Urrutia, M.D. failed to properly monitor and treat Aleshia Napier's mental health condition and needs, including, but not limited to:

A.      failing to provide Aleshia with daily mental health treatment by a licensed Psychiatrist or Psychologist while admitted to an Isolation Management Room despite knowledge of her suicidal history and tendencies;

B.      failing to provide Aleshia with regular mental health treatment while in solitary confinement despite knowledge of her suicidal history and tendencies;

C.      failing to provide Aleshia with regular mental health monitoring and observation while in solitary confinement despite knowledge of her suicidal history and tendencies;

D.      failing to provide Aleshia with crisis stabilization care despite knowledge of her need for intensive and structured care;

E.      failing to adequately respond to Aleshia's mental health emergencies reported while in solitary confinement despite knowledge of her suicidal history and tendencies; and

- 22 -

F.      failing to properly place Aleshia under adequate suicidal preventive measures necessary to prevent her death, despite knowledge of the risks solitary confinement poses to suicidal inmates, including, but not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate.

82.     As a direct and proximate result of defendant Alejandro Urrutia, M.D.'s failure to perform his duty of using reasonable care to ensure Aleshia Napier's safety, Aleshia Napier died.

83.     Defendant Alejandro Urrutia, M.D. knew of Aleshia Napier's prior suicide attempts and mental health history while confined in the FDOC.  Defendant Alejandro Urrutia, M.D.'s actions and omissions were made consciously and voluntarily, and it was reasonably foreseeable that harm would befall Aleshia Napier either directly or indirectly as a result of the actions and omissions of defendant Alejandro Urrutia, M.D.

84.     As the direct and proximate result of defendant Urrutia's medical malpractice and the negligent, gross negligent, and/or intentional mental health care herein alleged, Aleshia Napier died.

85.     Defendant Alejandro Urrutia, M.D. acted with evil intent, malice, wantonness, and/or lucre when he committed the acts and omissions alleged herein.

WHEREFORE, on this Count Four, as a result of defendant Urrutia's violation of Florida's Wrongful Death Act and Florida's Medical Malpractice provisions, which caused the tragic and untimely death of Aleshia Napier, the Survivors of and the Estate of Aleshia Napier have sustained the following damages, and therefore seek same from defendant Alejandro Urrutia, M.D.:

{07022454;5}

A. The Estate of Aleshia Napier has sustained the following damages:

    1. funeral and burial expenses incurred as a result of the death of Aleshia Napier that have become a charge against her Estate or that were paid on her behalf;

    2. loss of prospective net Estate accumulations; and

    3. loss of earnings of Aleshia Napier from the date of her death, less loss support of her survivors excluding contributions in kind with interest.

B. Albert Napier, as the father of Aleshia Napier, a minor at her time of death, has sustained the following damages:

    1. loss of support and services of his daughter;

    2. mental pain and suffering from the date of injury and continuing for the remainder of his life; and

    3. medical and funeral expenses due to the death of Aleshia Napier.

C. Jane Napier, as the mother of Aleshia Napier, a minor at her time of death, has sustained the following damages:

    1. loss of support and services of her daughter;

    2. mental pain and suffering from the date of injury and continuing for the remainder of her life; and

    3. medical and funeral expenses due to the death of Aleshia Napier.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; punitive damages; and such other and further relief as the Court deems just and equitable.

{07022454;5}

## Count Five – Deliberate Indifference to Serious Mental
## Health Needs by Defendant Alejandro Urrutia

86.     Plaintiff repeats and realleges paragraphs one through fifty-one as if fully set forth herein.

87.     Plaintiff's claim for relief on this Count Five is predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Eighth and Fourteenth Amendments to the U.S. Constitution and the laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

88.     At all times material to this action, defendant Urrutia was employed by defendant MHM Correctional Services, Inc.  All actions performed by defendant Urrutia were done under color of state law and constitute state action.

89.     Defendant Urrutia deliberately disregarded the immediate and serious threat to Aleshia Napier's mental health and well-being, and exhibited deliberate and callous indifference to her serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment and observation necessary to treat Aleshia's serious mental health needs and prevent her death.

90.     With full knowledge of Aleshia Napier's suicidal history and tendencies, and with complete knowledge of Aleshia Napier's need for intensive and structured crisis stabilization care, observation and treatment, defendant Urrutia intentionally and knowingly failed to take action to provide Aleshia Napier with such needed care, observation and treatment or, at a minimum, arrange for Aleshia Napier to remain in an Isolation Management Room and under continued Suicide Observation Status.

- 25 -

{07022454;5}

91.     Defendant Urrutia was well aware of Aleshia Napier's mental health history and more particularly her prior suicide attempts while confined in the FDOC.   Despite his knowledge, defendant Urrutia intentionally and knowingly failed to intervene and provide serious, ongoing treatment for Aleshia, failed to regularly monitor Aleshia's mental health care needs, and for all practical purposes, simply abandoned Aleshia Napier as a patient.

92.     Defendant Urrutia knew at all times material to this action that there was a substantial risk that Aleshia would attempt suicide, that Aleshia's suicide was reasonably foreseeable, that the threat of this action was imminent and immediate, and that Aleshia possessed the means to accomplish that end.

93.     Defendant Urrutia deliberately disregarded the immediate and serious threat to Aleshia's mental health and well-being and exhibited deliberate indifference and callous indifference to her serious medical and psychological needs by denying and unreasonably delaying access to competent psychiatric care to treat her serious mental illness, in that:

A.     with full knowledge of Aleshia's prior suicide attempts, and that her suicide was reasonably foreseeable, defendant Urrutia abandoned Aleshia as his patient;

B.     with full knowledge of Aleshia's expressed thoughts of committing suicide and after several attempts at doing so, defendant Urrutia failed to consistently have Aleshia monitored or observed on a regular basis;

C.     with full knowledge of Aleshia's prior suicide attempts, and her mental health history, it was incumbent on defendant Urrutia to take some action to provide Aleshia with constant suicide observation and psychiatric care; and

- 26 -

D.      with full knowledge of Aleshia's prior suicide attempts and mental health history, defendant Urrutia's actions in failing to provide constant observation and adequate psychiatric care by trained mental health professionals was so grossly substandard, incompetent, and inadequate as to fairly be characterized as medical and mental health care so cursory as to amount to no medical and mental health care at all; and

E.      with full knowledge of Aleshia's prior suicide attempts and mental health history, defendant Urrutia's actions in placing Aleshia in solitary confinement despite knowledge of the risks solitary confinement poses to suicidal inmates, including, but not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate.

94.      In light of the aforementioned, Aleshia Napier suffered from both an objectively and subjectively substantial risk of serious harm while under the care and supervision of Defendant Urrutia; Defendant Urrutia reacted to this risk in an objectively and subjectively unreasonable manner.

95.      It is more likely than not that the failures of defendant Urrutia as alleged above were the cause of Aleshia's suicide.

96.      As a direct and proximate result of defendant Urrutia's deliberate indifference to Aleshia Napier's serious mental health needs, Aleshia Napier committed suicide by hanging herself in her solitary confinement cell on October 31, 2006.

97.      Defendant Urrutia acted with evil intent, malice, wantonness, and/or lucre when he was deliberately indifferent to Aleshia Napier's serious mental health needs.

- 27 -

WHEREFORE, on this Count Five, as a result of defendant Urrutia's violation of the Eighth and Fourteenth Amendments to the U.S. Constitution, which caused the tragic and untimely death of Aleshia Napier, the Survivors of and the Estate of Aleshia Napier have sustained the following damages, and therefore seek same from defendant Urrutia:

A.  The Estate of Aleshia Napier has sustained the following damages:

    1.  funeral and burial expenses incurred as a result of the death of Aleshia Napier that have become a charge against her Estate or that were paid on her behalf;

    2.  loss of prospective net Estate accumulations;

    3.  pre- and post judgment interest; and

    4.  loss of earnings of Aleshia Napier from the date of her death, less loss support of her survivors excluding contributions in kind with interest.

B.  Albert Napier, as the father of Aleshia Napier, a minor at her time of death, has sustained the following damages:

    1.  loss of support and services of his daughter;

    2.  great mental pain, anguish, and suffering from the date of injury and continuing for the remainder of his life;

    3.  pre- and post-judgment interest; and

    4.  medical and funeral expenses due to the death of Aleshia Napier.

C.  Jane Napier, as the mother of Aleshia Napier, a minor at her time of death, has sustained the following damages:

    1.  loss of support and services of her daughter;

- 28 -

2. great mental pain, anguish, and suffering from the date of injury and continuing for the remainder of her life;

3. pre- and post-judgment interest; and

4. medical and funeral expenses due to the death of Aleshia Napier.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; punitive damages; attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and such other and further relief as the Court deems just and equitable.

### Count Six – Negligent Retention
### Defendant Florida Department of Corrections

98. Plaintiff repeats and realleges paragraphs one through fifty-one as if fully set forth herein.

99. Defendant Florida Department of Corrections was put on notice of the harmful propensities of defendant Prison Health Services through audits, reports, and the media. These harmful propensities include, but are not limited to:

A. failing to provide suicidal inmates with daily mental health treatment by a licensed Psychiatrist or Psychologist;

B. failing to provide suicidal inmates with regular mental health treatment;

C. failing to provide suicidal inmates with regular mental health monitoring and observation;

D. failing to provide suicidal inmates with adequate crisis stabilization care;

E. failing to adequately respond to suicidal inmates' mental health emergencies; and

- 29 -

F.     failing to properly place suicidal inmates under adequate suicidal preventive measures necessary to prevent their deaths, despite knowledge of the risks solitary confinement poses to suicidal inmates, including, but not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate.

100.   Defendant Florida Department of Corrections had an obligation to make an appropriate investigation of its agents and employees and failed to do so.

101.   An appropriate investigation would have revealed the unsuitability of defendant Prison Health Services for providing medical care to Aleshia Napier and/or for employment in general.

102.   It was unreasonable for defendant Florida Department of Corrections to retain defendant Prison Health Services in light of the information it knew or should have known.

WHEREFORE, on this Count Six, as a result of defendant Florida Department of Corrections' negligent retention of defendant Prison Health Services, which caused the tragic and untimely death of Aleshia Napier, the Survivors of and the Estate of Aleshia Napier have sustained the following damages and therefore seek same from defendant Florida Department of Corrections:

A.     The Estate of Aleshia Napier has sustained the following damages:

1.     funeral and burial expenses incurred as a result of the death of Aleshia Napier that have become a charge against her Estate or that were paid on her behalf;

2.     loss of prospective net Estate accumulations; and

- 30 -

3.     loss of earnings of Aleshia Napier from the date of her death, less loss
       support of her survivors excluding contributions in kind with interest.

B.     Albert Napier, as the father of Aleshia Napier, a minor at her time of death, has
       sustained the following damages:

1.     loss of support and services of his daughter;

2.     mental pain and suffering from the date of injury and continuing for the
       remainder of his life; and

3.     medical and funeral expenses due to the death of Aleshia Napier.

C.     Jane Napier, as the mother of Aleshia Napier, a minor at her time of death, has
       sustained the following damages:

1.     loss of support and services of her daughter;

2.     mental pain and suffering from the date of injury and continuing for the
       remainder of her life; and

3.     medical and funeral expenses due to the death of Aleshia Napier.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the
aforementioned damages; any and all other compensatory damages suffered by Plaintiff; and
such other and further relief as the Court deems just and equitable.

## Count Seven – Americans with Disabilities Act
## Defendant Florida Department of Corrections

103.   Plaintiff repeats and realleges paragraphs one through fifty-one as if fully set forth
herein.

104.   This Count Seven is a claim for disability discrimination against defendant,
Florida Department of Corrections, for violating Title II of the Americans with Disabilities Act,

- 31 -

42 U.S.C. § 12101 et seq., (hereinafter the "ADA") which provides in pertinent part at 42 U.S.C. § 12132:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

Title II of the Act prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

- subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

28 C.F.R. § 39.130.

105. Aleshia was disabled as defined at 42 U.S.C. § 12102(2) and a "qualified individual" as defined at 42 U.S.C. § 12131(2), as she suffered from bipolar disorder and clinical depression with psychotic features.

106. Defendant Florida Department of Corrections is a public entity that has violated Title II of the ADA.

107. Defendant Florida Department of Corrections owed Aleshia a non-delegable duty to ensure that her well-being and safety would not be compromised as a result of discrimination based on her disability. Accordingly, defendant Florida Department of Corrections is vicariously liable for the actions of any and all persons or entities defendant Florida Department of Corrections designated to care for Aleshia.

108. Defendant Florida Department of Corrections acknowledged that its agents and employees were authorized to act for defendant Florida Department of Corrections when they

- 32 -

{07022454;5}

committed the ADA violations alleged herein. Defendant Florida Department of Corrections' agents and employees accepted the undertaking of acting on behalf of defendant Florida Department of Corrections when they committed the ADA violations alleged herein. Defendant Florida Department of Corrections had control over its agents and employees when they committed the ADA violations alleged herein.

109.    The ADA violations alleged herein and committed by defendant Florida Department of Corrections, and the persons and entities charged with caring for Aleshia, were done while acting within the course and scope of their employ and/or agency with defendant Florida Department of Corrections.

110.    Aleshia's need for a reasonable accommodation was obvious.

111.    Defendant Florida Department of Corrections, and the persons and entities charged with caring for Aleshia, knew and/or should have known of Aleshia's need for a reasonable accommodation.

112.    Defendant Florida Department of Corrections, and the persons and entities charged with caring for Aleshia, acted intentionally and/or with deliberate indifference to Aleshia's need for a reasonable accommodation by, among other things:

A.      failing to properly place Aleshia under adequate suicidal preventive measures necessary to prevent her death, despite knowledge of Aleshia's suicidal history and tendencies, and despite knowledge of the risks solitary confinement poses to suicidal inmates, including, but not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate;

- 33 -

B.     housing Aleshia in a solitary confinement cell that was not equipped for a known suicidal inmate, and which contained several known instrumentalities for suicide, such as clothing, sheets, towels, and various means and instrumentalities from which to tie and suspend those items, despite knowledge of Aleshia's suicidal history and tendencies; and

C.     housing Aleshia in a solitary confinement cell without a suicide watch and in which Aleshia could not be regularly monitored for suicidal activity, despite knowledge of Aleshia's suicidal history and tendencies.

113.     As a direct and proximate result of defendant Florida Department of Corrections' and the persons and entities charged with caring for Aleshia's failure and intentional refusal to provide Aleshia with an accommodation for her disability, she died.

WHEREFORE, on this Count Seven, as a result of the tragic and untimely death of Aleshia Napier in violation of the ADA, the Survivors of and the Estate of Aleshia Napier have sustained the following damages, and therefore seek same from defendant Florida Department of Corrections:

A.     The Estate of Aleshia Napier has sustained the following damages:

1.     funeral and burial expenses incurred as a result of the death of Aleshia Napier that have become a charge against her Estate or that were paid on her behalf;

2.     loss of prospective net Estate accumulations; and

3.     loss of earnings of Aleshia Napier from the date of her death, less loss support of her survivors excluding contributions in kind with interest.

- 34 -

B.     Albert Napier, as the father of Aleshia Napier, a minor at her time of death, has sustained the following damages:

    1.    loss of support and services of his daughter;

    2.    mental pain and suffering from the date of injury and continuing for the remainder of his life; and

    3.    medical and funeral expenses due to the death of Aleshia Napier.

C.     Jane Napier, as the mother of Aleshia Napier, a minor at her time of death, has sustained the following damages:

    1.    loss of support and services of her daughter;

    2.    mental pain and suffering from the date of injury and continuing for the remainder of her life; and

    3.    medical and funeral expenses due to the death of Aleshia Napier.

114.    In sum, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages, any and all other compensatory damages suffered by Plaintiff, and Plaintiff's attorneys' fees and costs in this action pursuant to 42 U.S.C. § 12205; declare the actions of the defendant Florida Department of Corrections complained herein to be in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; and grant such other and further relief as the Court deems just and equitable.

- 35 -

**Count Eight – Americans with Disabilities Act**
**Defendant Prison Health Services, Inc.**

115.    Plaintiff repeats and realleges paragraphs one through fifty-one as if fully set forth herein.

116.    This Count Eight is a claim for disability discrimination against defendant, Prison Health Services, Inc., for violating Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (hereinafter the "ADA") which provides in pertinent part at 42 U.S.C. § 12132:

>  No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

Title II of the Act prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

- subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

28 C.F.R. § 39.130.

117.    Aleshia was disabled as defined at 42 U.S.C. § 12102(2) and a "qualified individual" as defined at 42 U.S.C. § 12131(2), as she suffered from bipolar disorder and clinical depression with psychotic features.

118.    Defendant PHS is charged with carrying out the duties and obligations of the Florida Department of Corrections, and as such is a public entity for purposes of Title II of the ADA.

- 36 -

{07022454;5}

119.     Defendant PHS owed Aleshia a non-delegable duty to ensure that her medical care and safety would not be compromised as a result of discrimination based on her disability. Accordingly, defendant PHS is vicariously liable for the actions of any and all persons or entities defendant PHS designated to care for Aleshia.

120.     Defendant PHS acknowledged that its agents and employees were authorized to act for defendant PHS when they committed the ADA violations alleged herein. Defendant PHS's agents and employees accepted the undertaking of acting on behalf of defendant PHS when they committed the ADA violations alleged herein. Defendant PHS had control over its agents and employees when they committed the ADA violations alleged herein.

121.     The ADA violations alleged herein and committed by defendant PHS, and the persons and entities charged with caring for Aleshia, were done while acting within the course and scope of their employ and/or agency with defendant PHS.

122.     Aleshia's need for a reasonable accommodation was obvious.

123.     Defendant PHS, and the persons and entities charged with caring for Aleshia, knew and/or should have known of Aleshia's need for a reasonable accommodation.

124.     Defendant PHS, and the persons and entities charged with caring for Aleshia, acted intentionally and/or with deliberate indifference to Aleshia's need for a reasonable accommodation by, among other things:

A.      failing to properly place Aleshia under adequate suicidal preventive measures necessary to prevent her death, despite knowledge of Aleshia's suicidal history and tendencies, and despite knowledge of the risks solitary confinement poses to suicidal inmates, including, but

- 37 -

not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate;

B.      housing Aleshia in a solitary confinement cell that was not equipped for a known suicidal inmate, and which contained several known instrumentalities for suicide, such as clothing, sheets, towels, and various means and instrumentalities from which to tie and suspend those items, despite knowledge of Aleshia's suicidal history and tendencies; and

C.      housing Aleshia in a solitary confinement cell without a suicide watch and in which Aleshia could not be regularly monitored for suicidal activity, despite knowledge of Aleshia's suicidal history and tendencies.

125.    As a direct and proximate result of defendant PHS's and the persons and entities charged with caring for Aleshia's failure and intentional refusal to provide Aleshia with an accommodation for her disability, she died.

WHEREFORE, on this Count Seven, as a result of the tragic and untimely death of Aleshia Napier in violation of the ADA, the Survivors of and the Estate of Aleshia have sustained the following damages, and therefore seek same from defendant PHS:

A.      The Estate of Aleshia Napier has sustained the following damages:

1.      funeral and burial expenses incurred as a result of the death of Aleshia Napier that have become a charge against her Estate or that were paid on her behalf;

2.      loss of prospective net Estate accumulations; and

3.      loss of earnings of Aleshia Napier from the date of her death, less loss support of her survivors excluding contributions in kind with interest.

B.   Albert Napier, as the father of Aleshia Napier, a minor at her time of death, has sustained the following damages:

1.   loss of support and services of his daughter;

2.   mental pain and suffering from the date of injury and continuing for the remainder of his life; and

3.   medical and funeral expenses due to the death of Aleshia Napier.

C.   Jane Napier, as the mother of Aleshia Napier, a minor at her time of death, has sustained the following damages:

1.   loss of support and services of her daughter;

2.   mental pain and suffering from the date of injury and continuing for the remainder of her life; and

3.   medical and funeral expenses due to the death of Aleshia Napier.

126.   In sum, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages, any and all other compensatory damages suffered by Plaintiff, and Plaintiff's attorneys' fees and costs in this action pursuant to 42 U.S.C. § 12205; declare the actions of the defendant PHS complained herein to be in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; and grant such other and further relief as the Court deems just and equitable.

- 39 -

{07022454;5}

## Count Nine – Americans with Disabilities Act
## Defendant MHM Correctional Services, Inc.

127.     Plaintiff repeats and realleges paragraphs one through fifty-one as if fully set forth herein.

128.     This Count Seven is a claim for disability discrimination against defendant, MHM, for violating Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (hereinafter the "ADA") which provides in pertinent part at 42 U.S.C. § 12132:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

Title II of the Act prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

- subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

28 C.F.R. § 39.130.

129.     Aleshia was disabled as defined at 42 U.S.C. § 12102(2) and a "qualified individual" as defined at 42 U.S.C. § 12131(2), as she suffered from bipolar disorder and clinical depression with psychotic features.

130.     Defendant MHM is charged with carrying out the duties and obligations of the Florida Department of Corrections, and as such is a public entity for purposes of Title II of the ADA.

- 40 -

131.    Defendant MHM owed Aleshia a non-delegable duty to ensure that her medical care and safety would not be compromised as a result of discrimination based on her disability. Accordingly, defendant MHM is vicariously liable for the actions of any and all persons or entities defendant MHM designated to care for Aleshia.

132.    Defendant MHM acknowledged that its agents and employees were authorized to act for defendant MHM when they committed the ADA violations alleged herein.  Defendant MHM's agents and employees accepted the undertaking of acting on behalf of defendant MHM when they committed the ADA violations alleged herein.  Defendant MHM had control over its agents and employees when they committed the ADA violations alleged herein.

133.    The ADA violations alleged herein and committed by defendant MHM, and the persons and entities charged with caring for Aleshia, were done while acting within the course and scope of their employ and/or agency with defendant MHM.

134.    Aleshia's need for a reasonable accommodation was obvious.

135.    Defendant MHM, and the persons and entities charged with caring for Aleshia, knew and/or should have known of Aleshia's need for a reasonable accommodation.

136.    Defendant MHM, and the persons and entities charged with caring for Aleshia, acted intentionally and/or with deliberate indifference to Aleshia's need for a reasonable accommodation by, among other things:

A.      failing to properly place Aleshia under adequate suicidal preventive measures necessary to prevent her death, despite knowledge of Aleshia's suicidal history and tendencies, and despite knowledge of the risks solitary confinement poses to suicidal inmates, including, but

- 41 -

not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate;

B.      housing Aleshia in a solitary confinement cell that was not equipped for a known suicidal inmate, and which contained several known instrumentalities for suicide, such as clothing, sheets, towels, and various means and instrumentalities from which to tie and suspend those items, despite knowledge of Aleshia's suicidal history and tendencies; and

C.      housing Aleshia in a solitary confinement cell without a suicide watch and in which Aleshia could not be regularly monitored for suicidal activity, despite knowledge of Aleshia's suicidal history and tendencies.

137.    As a direct and proximate result of defendant MHM's and the persons and entities charged with caring for Aleshia's failure and intentional refusal to provide Aleshia with an accommodation for her disability, she died.

WHEREFORE, on this Count Seven, as a result of the tragic and untimely death of Aleshia Napier in violation of the ADA, the Survivors of and the Estate of Aleshia have sustained the following damages, and therefore seek same from defendant MHM:

A.      The Estate of Aleshia Napier has sustained the following damages:

1.      funeral and burial expenses incurred as a result of the death of Aleshia Napier that have become a charge against her Estate or that were paid on her behalf;

2.      loss of prospective net Estate accumulations; and

3.      loss of earnings of Aleshia Napier from the date of her death, less loss support of her survivors excluding contributions in kind with interest.

{07022454;5}

    B.    Albert Napier, as the father of Aleshia Napier, a minor at her time of death, has sustained the following damages:

        1.    loss of support and services of his daughter;

        2.    mental pain and suffering from the date of injury and continuing for the remainder of his life; and

        3.    medical and funeral expenses due to the death of Aleshia Napier.

    C.    Jane Napier, as the mother of Aleshia Napier, a minor at her time of death, has sustained the following damages:

        1.    loss of support and services of her daughter;

        2.    mental pain and suffering from the date of injury and continuing for the remainder of her life; and

        3.    medical and funeral expenses due to the death of Aleshia Napier.

138.    In sum, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages, any and all other compensatory damages suffered by Plaintiff, and Plaintiff's attorneys' fees and costs in this action pursuant to 42 U.S.C. § 12205; declare the actions of the defendant MHM complained herein to be in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; and grant such other and further relief as the Court deems just and equitable.

- 43 -

**<u>Certificate of Counsel</u>**

Undersigned counsel hereby certifies, pursuant to Section 766.104(1), Florida Statutes, that he has made a good faith investigation and that he has a reasonable basis to conclude that defendants, Florida Department of Corrections, Prison Health Services, Inc., MHM Correctional Services, Inc. and Alejandro Urrutia, M.D., are liable as alleged.

**<u>Jury Trial Demand</u>**

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable in this matter.

<div style="margin-left: 40%;">

Respectfully submitted,

Randall C. Berg, Jr., Esq.
Florida Bar No. 318371
Joshua A. Glickman, Esq.
Florida Bar No. 43994
Shawn A. Heller, Esq.
Florida Bar No. 46346

Florida Justice Institute, Inc.
3750 Miami Tower
100 S.E. Second Street
Miami, Florida 33131-2309
305-358-2081
305-358-0910 (FAX)
E-mail: *RBerg@FloridaJusticeInstitute.org*
E-mail: *JGlickman@FloridaJusticeInstitute.org*
E-mail: *SHeller@FloridaJusticeInstitute.org*

Attorneys for the Plaintiff

By:  *s/Randall C. Berg, Jr.*
      Randall C. Berg, Jr., Esq.
      Florida Bar No. 318371

</div>

- 44 -

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 31, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<div style="text-align:right">

 s/. *Randall C. Berg, Jr.*
Randall C. Berg, Jr., Esq.

</div>

**SERVICE LIST**
**Case No. 09-CIV-61158 – Seitz/O'Sullivan**
**United States District Court, Southern District of Florida**


By electronic filing:

Gregg A. Toomey, Esq.
Henderson, Franklin, Starnes & Holt, P.A.
1715 Monroe Street
Fort Myers, FL 33901
239-344-1100
Fax: 239-344-1200
Email: gregg.toomey@henlaw.com
Counsel for Defendants Prison Health Services, Inc. and Florida Department of Corrections


Sheridan K. Weissenborn, Esq.
Sheridan K. Weissenborn & Associates
3001 Ponce De Leon Blvd.
Coral Gables, FL 33134
305-446-5100
Fax: 445-6793
Email: weissenborn@papylaw.com
Counsel for Defendant Florida Department of Corrections


Steven M. Lury, Esq.
Timothy D. Kennison, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
One East Broward Blvd., Suite 1400
Fort Lauderdale, FL 33301
954-523-7008
Fax: 954-523-7009
Email: slury@qpwblaw.com
Counsel for Defendants MHM Correctional Services, Inc. and Alejandro Urrutia, M.D.

{07022454;5}